FILED
CLERK
8/23/2024 5:10 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------X

UNITED STATES OF AMERICA,

        Plaintiff,

    -against-

BRIAN SHIELDS *et al.*,

        Defendant.

----------------------------------------X

**MEMORANDUM ORDER**

22-CR-00526-JMA-ST-2

**A P P E A R A N C E S:**

    **Charles N. Rose, Esq.**
    Assistant United States Attorney
    Eastern District of New York
    610 Federal Plaza
    Central Islip, NY 11722
    *For Plaintiff USA*

    **Terrence P. Buckley, Esq.**
    320 Carleton Avenue, Suite 4200
    Central Islip, NY 11722
    *For Defendant Davionne Staley*

**WICKS,** Magistrate Judge:

    Before the Court is the Petition of U.S. Pretrial Services ("USPS") for Action on Conditions of Pretrial Release. This application comes on the heels of Defendant having pleaded guilty to underlying criminal charges. USPS requests a Bond Violation Hearing and for revocation of the bond of Defendant Davionne Staley, who pled guilty on July 10, 2024 to Conspiracy to Commit Bank Theft in violation of 18 U.S.C. §§ 371 and 3551. For the following reasons, the application is **GRANTED,** and the Court orders permanent detention pending

sentencing by the Hon. Joan M. Azrack on November 20, 2024. This Order, in addition to any other findings made at the hearing, sets forth the Court's findings of fact and conclusions of law, as required by 18 U.S.C. § 3143.

## BACKGROUND

*The Arraignment and Initial Bond Hearing*

Davionne Staley, a Texas resident, was indicted on November 16, 2022 for participating in the "planning and execut[ion of] ATM burglaries and larcenies in the northeastern United States," that is, in the Eastern District of New York, along with co-Defendants Brian Shields and Angelia Roy. (ECF Nos. 1 and 20.) They were indicted for conspiracy to commit bank theft as well as eight (8) counts of bank theft. (ECF No. 20.)

Defendant appeared before the undersigned for his initial appearance and was arraigned on the Complaint on October 27, 2022 at which point Defendants entered a plea of "Not Guilty" to the allegations in the Complaint. (ECF No. 8.) The Court also entered a permanent order of detention for Staley, without prejudice to Defendant presenting a bail package in the future. (*Id.*) The undersigned found several reasons for detention, including:

- The weight of evidence against the defendant was strong
- His crimes were subject to lengthy period of incarceration if convicted
- He had a prior criminal history
- He had participated in criminal activity while on probation, parole, or supervision
- He had a history of alcohol or substance abuse
- He lacked significant community or family ties to this district

(ECF No. 14.)

On November 9, 2022, Staley was released from custody on a bond requiring home detention. (ECF No. 36.) On December 7, 2022, Magistrate Judge Steven Tiscione arraigned Staley on the indictment, and Staley continued his plea of "Not Guilty." (ECF No. 23.) Judge

Tiscione set conditions for release and bond. (ECF No. 23.) The bond was set for $150,000 and the following conditions were set:

- Defendant was to remain in and not leave New York City, Long Island, and Texas without leave of Court;

- Defendant was to avoid all contact with all co-defendants except in the presence of counsel;

- Defendant was to surrender all passports to USPS and cannot obtain other passports or international travel documents;

- Defendant was to be placed under USPS's supervision and

    o Subject to random visits
    o Reporting as directed by USPS
    o Undergo drug testing, evaluation and/or treatment for substance abuse
    o Subject to: home detention enforced by location monitoring and restrictions in his employment, appointments, court appearances, attorney visits, and other activities as approved by USPS

- Defendant was additionally ordered not to possess any firearms or destructive devices.

(ECF No. 26.)

On May 5, 2023, the Court granted Defendant's request to modify the bail conditions from home detention to standalone monitoring given Staley's six-months of compliance with the Court's orders and obtained employment. (Electronic Order dated May 8, 2023.)

In July 2023, Defendant was arrested for traffic violations but was released from custody shortly thereafter. (USPS Rep. at 1.) He reported his arrest to Officer Jarrod Shaw in the Southern District of Texas who then challenged Defendant about his movement around the city "and [his] failure to allow field contacts at his approved residence." (*Id.* at 1-2.) Defendant conceded he was not consistently living at that residence. (*Id.* at 2.) USPS thereafter recommended that his conditions be modified from standalone monitoring to curfew—which was granted. (*Id.*) On March 7, 2024, USPS believed he was tampering with the location

3

monitoring equipment by "shielding his unit using metallic sheets such as aluminum foil and leaving his residence." (USPS Rep. at 2.)

In the interim, Judge Azrack held several status conferences with the Defendant (ECF Nos. 37, 45, 52-54) and subsequently set a bail violation hearing for March 13, 2024 (ECF No. 56). At that hearing, Judge Azrack modified the bond from curfew to home detention "with permission to leave for work." (*Id.*) If issues persisted with the Defendant's bracelet, then the Defendant would be remanded. (*Id.*) On April 17, 2024, an officer in Texas attempted to verify Defendant's employment but there was no record of him working at the location on file; he did however obtain a position with a moving company named Road Runner. (USPS Rep. at 2.) On April 18, 2024, Defendant failed to appear at a scheduled status conference and the Court set another bail violation hearing at which point Defendant remained on home detention. (ECF Nos. 58, 62.)

At the next status conference/bail violation hearing on June 13, 2024, the Court scheduled "a change of plea hearing" for July 10, 2024. (ECF No. 65.) The Court permitted Staley to travel at the expense of the Marshals Service to appear in person in court for this guilty plea hearing. (ECF No. 72-1.) This request was granted (ECF No. 73) and Defendant entered a guilty plea to Count 1 of the indictment—conspiracy to commit bank theft in violation of 18 U.S.C. §§ 371, 3551. (ECF No. 79.)

### *What Transpired After the Guilty Plea*

Following acceptance of the guilty plea, Defendant filed a request to change his conditions of release back to standalone monitoring "so that he may spend more time with his family until he is sentenced." (ECF No. 80.) USPS and the Government objected to this request. The Court granted the Defendant's request on the condition that his release be modified to curfew as approved by USPS. (USPS Rep. at 2.)

4

On July 26, 2024, USPS submitted a memorandum describing how Defendant was yet again tampering with his location monitoring—specifically, he had failed to charge the bracelet while in New York, causing it to die. (USPS Rep. at 2.) He was therefore "unmonitored from 6:27 a.m. on July 11, 2024, until 7:06 a.m. on July 12, 2024." (*Id.*)

On August 10, 2024, Defendant was arrested for Unauthorized Use of Vehicle—a felony—and Evading Arrest/Detention—misdemeanor—in Harris County, Texas because he "unlawfully, intentionally, and knowingly operated a motor-propelled vehicle, namely an automobile…without consent [of the owner] and then intentionally fled from [the officer] attempting to detain the defendant." (USPS Rep. at 2.) Defendant's monitor died while out of custody from August 12, 2024 to August 13, 2024, again leaving him unmonitored. (*Id.*) Defendant's protracted history of misconduct prompted the instant Petition by USPS.

On August 23, 2024, Defendant appeared before the undersigned for a bail revocation hearing. At the hearing, the Government and USPS urged for detention, to which the Defense strenuously opposed.

## DISCUSSION

**A. Defendant's Commission of a Crime and Violation of Release Conditions under 18 U.S.C. § 3148**

Section 3148 of The Bail Reform Act provides that a person who has been released and violated a condition of release is subject to a revocation of release and order of detention. 18 U.S.C. § 3148. Specifically, § 3148(b) provides: "[A] person charged with violating the condition of release that such person not commit a Federal, State, or local crime during the period of release, shall be brought before the judicial officer who ordered the release and whose order is alleged to have been violated." Pursuant to this section, a court must enter an order of revocation and detention if, after a hearing, it finds: (i) "probable cause to believe that the person

5

has committed a Federal, State, or local crime while on release;" *or* "clear and convincing evidence that the person has violated any other condition of release;" *and* (ii) "there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community;" *or* "the person is unlikely to abide by any condition or combination of conditions of release." See § 3148(b)(1)-(2).

"[P]robable cause under section 3148(b)(1)(A) requires only that the facts available to the judicial officer warrant a man of reasonable caution in the belief that the defendant has committed a crime while on bail." *Id.* (internal citations omitted); *see also United States v. Galanis*, 656 F. App'x 560, 562 (2d Cir. 2016) ("Probable cause does not require refutation of every possible innocent explanation for the conduct at issue."). Indeed, this standard "does not demand certainty but only a 'fair probability' that ... evidence of a crime will be found." *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

"[P]robable cause is a reasonable ground for belief of guilt" based on the totality of the circumstances. *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (citations and internal quotations omitted). This "practical, nontechnical conception" turns on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Gates,* 462 U.S. at 231; *Pringle,* 540 U.S. at 371 (citations and internal quotations omitted). "Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the [probable-cause] decision." *Gates,* 462 U.S. at 235; *see also United States v. Vilar*, No. S305CR621KMK, 2007 WL 1075041, at *19 (S.D.N.Y. Apr. 4, 2007) (internal citations omitted) (cleaned up) ("In assessing probable cause, courts are to look at the totality of the circumstances, and should apply a flexible, common-sense approach. The evidence must be seen and weighed not in terms of library analysis by scholars,

6

but as understood by those versed in the field of law enforcement."); *United States v. Hickey,* 16 F.Supp.2d 223, 238 (E.D.N.Y. 1998) (quotations omitted) (finding there is probable cause when "there is a fair probability that evidence of a crime will be found").

The Court finds probable cause exists to believe that Defendant committed a state crime—the unauthorized use of a vehicle in violation of the Texas Penal Code § 31.07, which is a felony. This section states that "[a] person commits [this] offense if he intentionally or knowingly operates another's…motor-propelled vehicle without the effective consent of the owner." Tex. Penal Code § 31.07 (2023). The elements are (1) the defendant intentionally or knowingly operated a vehicle and (2) this operation was without the owner's consent. *Williamson v. State*, NO. 03-17-00787-CR, 2019 Tex. App. LEXIS 8768, at *18 (Tex. App. Oct. 2, 2019); *Teague v. State*, 789 S.W.2d 380, 382 (Tex. App. 1990) (same).

Here, both elements are satisfied. The USPS report states that Defendant "unlawfully, intentionally, and knowingly operated a motor-propelled vehicle, namely an automobile…without consent [of the owner] and then intentionally fled from [the officer] attempting to detain the defendant." (USPS Rep. at 2.) As a result, he was held in custody and was not released until the following day. (*Id.*)

Notwithstanding the probable cause that Defendant committed a felony, there is also clear and convincing evidence that Defendant violated various conditions of his release. The bail conditions, signed by Defendant himself, subjected Defendant to random visits by a USPS Officer and further informed him that he would be placed under the location monitoring program. (ECF No. 26.) Defendant violated these conditions when he used aluminum foil sheets to block USPS's monitoring of his movements and left his residence at unauthorized times, despite his being on curfew, and he "failed to allow field contacts at his approved

7

residence." (USPS Rep. at 1-2.); *United States v. Smith,* No. 2:12-cr-00004-APG-GWF, 2014 U.S. Dist. LEXIS 71075, at *7-8 (D. Nev. May 22, 2014) (revoking defendant's pretrial release where defendant removed his GPS tracking device and later wrapped it in foil and absconded to Jamaica). Furthermore, while on curfew, on two separate occasions, he failed to charge his bracelet and allowed it to die for approximately 24 hours in July 2024 and in August 2024. (*Id.*); *United States v. Perez,* 19 Cr. 297 (PAE), 2024 U.S. Dist. LEXIS 11717, at *3-4 (S.D.N.Y. Jan. 23, 2024) (ordering that defendant be detained pending trial after he, *inter alia,* failed to keep his GPS ankle bracelet on and absconded before the scheduled bail revocation hearing); *see also United States v. McGriff,* 21-CR-383 (WFK), 2022 U.S. Dist. LEXIS 29804, at *8 (E.D.N.Y. Feb. 18, 2022); *United States v. Courton,* 15-CR-200-A, 2017 U.S. Dist. LEXIS 128021, at *6 (W.D.N.Y. Aug. 11, 2017) (ordering that defendant be detained given that she had several unauthorized absences; breached the conditions of the location monitoring program by failing to charge the device and be available by phone; failing to report for a drug test; and make required calls to the Probation Office to schedule randomized drug tests).

Accordingly, the Court preliminarily finds that probable cause to believe that Defendant has committed a crime while on release *and* clear and convincing evidence that Defendant violated various conditions of his release.

### B. Analysis of Flight, Dangerousness to the Community, and Possibility of Compliance with Other Conditions

Having found that the first step is satisfied on two separate grounds, the Court next turns to whether there is a condition or combination of conditions of release that can assure he will not flee or pose a danger *or* whether Defendant is unlikely to abide by any other condition or combination of conditions upon release.

"If there is probable cause to believe that, while on release, the person committed a Federal, State, or local felony, *a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community*." 18 U.S.C. § 3148(b) (emphasis added). The Government bears the burden by a preponderance of the evidence that the defendant poses a risk of flight or danger to the community. *United States v. Parker*, 65 F. Supp. 3d 358, 364 (W.D.N.Y. 2014); *see also United States v. Gotti*, 794 F.2d 773, 777 (2d Cir. 1986) ("Where there is probable cause to believe the released defendant has committed a crime, he may thereafter be detained upon a finding, by only a preponderance of the evidence, that no conditions of release will guard against flight or dangerousness or that the person is unlikely to abide by any release condition.").

Additionally, pursuant to 18 U.S.C. § 3148(b)(2)(A), the Court is required to consider the following factors in determining whether there are any release conditions that will assure both the appearance of the person required and the safety of the community: (i) the nature of the charge, including whether it was violent; (ii) the weight of the evidence against the person, (iii) the person's traits, like character, mental condition, family ties, employment, financial resources, past conduct, criminal history, and record concerning appearance at court proceedings, and whether the person was on probation, parole, or on other release pending sentencing; and (iv) the seriousness or nature of the danger posed to the community by the person's release. *See* 18 U.S.C. § 3142(g).

Considering the factors articulated in 18 U.S.C. § 3142(g), the Court finds that Defendant cannot otherwise overcome the rebuttable presumption that no condition or combination of conditions will assure that he will not pose a danger to the safety of any other person or the community, especially in light of USPS's report. While the nature of the crime charged is not

9

violent[1], Defendant's accessibility to a car is a tool that poses danger. Defendant was arrested on August 10, 2024 for operating a car without the owner's consent—a car is the same device utilized in his bank thefts as either a getaway car or to otherwise pry the ATMs open to steal thousands of dollars. (*See* ECF No. 1.) In other words, cars were used to further the underlying crimes to which he has now pleaded guilty.

The Court additionally takes into consideration Defendant's disposition to deceive USPS given that he placed foil on the monitor, failed to charge it allowing it to die on two occasions, and that he lied about his place of employment. At the very least, "[t]he court finds this lack of candor troubling." *See United States v. Patch,* Case No. 18-cr-187-SM-3, 2021 U.S. Dist. LEXIS 53111, at *5 (D.N.H. Mar. 1, 2021); *see also United States v. Kelley*, 10-CR-266A, 2010 U.S. Dist. LEXIS 110544, at *7-8 (W.D.N.Y. Oct. 18, 2010) ("Defendant thus has ignored established orders of the Court in such a way that there is no reason to believe that he will obey future conditions of release."); *United States v. Mayo*, NO. 19-6-01, 2019 U.S. Dist. LEXIS 103933, at *11 (W.D. La. June 20, 2019) ("Mayo undermined the conditions previously imposed on him and demonstrated a cavalier attitude about strict and consistent compliance with his monitoring conditions. He violated the court's orders [repeatedly]. And just as significantly, Mayo has been dishonest with the court about just what he was doing during his repeated unauthorized absences."). Defendant's deception and failure to maintain the device's functionality supports his capacity to flee, as his movements have gone undetected for several hours at a time, causing USPS to be unaware of his actions and frankly whether he is committing

---

[1] *See* 18 U.S.C. § 3156(a)(4) (stating that a "crime of violence" includes an offense with an element geared toward "the use, attempted use, or threatened use of physical force" against a person); *United States v. Boyett,* Cr. No. 06-30026-01, 2007 U.S. Dist. LEXIS 70660, at *5 (W.D. La. Sept. 24, 2007) ("It is clear that neither bank theft (or bank larceny as it was previously known) or conspiracy to commit bank theft have as an element of the offense the use or attempted or threatened use of physical force.").

any further crimes or violating other conditions of his release. *See United States v. Martin,* 447 F. Supp. 3d 399, 403 (D. Md. 2020) ("While the location monitoring that he proposes may offer useful information about where he is, it provides little useful information about what he is doing."); *United States v. Singerman,* No. 19-80030-CR, 2022 U.S. Dist. LEXIS 7969, at *8 (S.D. Fla. Jan. 14, 2022) ("The Court simply no longer trusts Defendant to comply with any of its orders or release conditions."). As evidenced by the Complaint, Defendant's larcenies also occurred near the JFK and LaGuardia airports and the Defendants' *modus operandi* was to commit the bank theft then get on a "short-turnaround flight" to escape law enforcement. (ECF No. 1 at 3-6.)

Furthermore, no other conditions of release could prevent him from committing crimes. This is established by his efforts to circumvent his home detention protocol, including the use of location monitoring, which is *not* foolproof as the Second Circuit has observed. *See United States v. Orena*, 986 F.2d 628, 632 (2d Cir. 1993) (noting that monitoring devices "can be circumvented" and "rendered inoperative"); *see also United States v. Kwok*, No. 23-CR-118, 2023 WL 3027440, at *7 (S.D.N.Y. Apr. 20, 2023) ("GPS monitoring is inadequate, as ankle monitors can be removed and ensure only a reduced head start should a defendant decide to flee.").

Accordingly, the Court finds Defendant violated several conditions of his bail bond, namely, that he was subject to a location restriction program with location monitoring as directed by USPS, failure to allow home visits at his residence, and committing a crime while out on release, such that revocation of his release and an order of detention is necessary and warranted under § 3148. (ECF No. 26.) And, because Defendant violated a mandatory condition of his bail bond, the Court additionally finds Defendant forfeited his $150,000.00 bail under Federal Rule

11

of Criminal Procedure 46(f)(1). *See* Fed. R. Crim. P. 46(f)(1) (emphasis added) ("The court must declare the bail forfeited if a condition of the bond is breached."); *see also United States v. Martinez*, 151 F.3d 68, 73 (2d Cir. 1998) (noting Courts interpret bail bonds "within the general framework of…contract law."); *United States v. Santiago*, 826 F.2d 499, 502 (7th Cir. 1987) ("[A] bail bond is a civil contractual agreement between the government and the…criminal defendant"); *United States v. Brooks*, 872 F.3d 78, 93 (2d Cir. 2017) ("The forfeiture of a bail bond functions as damages for breach of the civil contract, not as a punishment for the commission of a criminal offense.").

**C. Defendant's Eligibility for Release Pending Sentencing under 18 U.S.C. § 3143**

Furthermore, since Defendant has pleaded guilty the undersigned must apply § 3143 of the Bail Reform Act which governs whether a recently convicted defendant is eligible for release pending sentencing. *See* 18 U.S.C. §§ 3143(a)(2). That provision states that "the judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence ... be detained." 18 U.S.C. § 3143. "Detention, therefore, is the general rule." *United States v. Quirion*, 808 F. Supp. 2d 343, 345 (D. Me. 2011). "An exception is available if 'the judicial officer finds by clear and convincing evidence that the person is *not* likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c).'" *Id.* (emphasis added). Under § 3148, a person who has been released and violated a condition of release is subject to a revocation of release and order of detention. 18 U.S.C. § 3148. The defendant bears the burden to prove, by clear and convincing evidence, that he is *not* likely to flee or pose a danger to the safety of any other person or the community if released. 18 U.S.C. § 3143(a)(2).

Although some courts have held that there is a limited relief from the general rule of mandatory detention, under 18 U.S.C. § 3145(c), a defendant subject to detention pursuant to

12

Section 3143(a)(2) "may be ordered released, under appropriate conditions," if two requirements are met. *First*, the district court must find "by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released" (whether subject to bail conditions or otherwise). 18 U.S.C. § 3143(a)(1); *see id*. § 3145(c). *Second*, it must be "clearly shown that there are exceptional reasons why such person's detention would not be appropriate." *Id*.; § 3145(c); *see also United States v. Lea*, 360 F.3d 401, 403–04 (2d Cir. 2004) (internal citations omitted) ("The test under § 3145(c) is necessarily a flexible one, and district courts have wide latitude to determine whether a particular set of circumstances qualifies as 'exceptional.' [However,] [t]here is nothing 'exceptional' about going to school, being employed, or being a first-time offender, either separately or in combination.").

Here, Defendant has already pleaded guilty to Conspiracy to Commit Bank Theft. To this end, having considered the record, the Court finds that Defendant has not satisfied his burden of demonstrating that he is neither a flight risk nor poses a danger to himself and the community if released. Therefore, Defendant is additionally subject to detention under 18 U.S.C. § 3143(a).

## CONCLUSION

For the reasons stated herein, USPS's request to revoke Defendant Staley's bond is **GRANTED**. The Bond is hereby revoked and Defendant is ordered detained pending sentencing in November 2024. Pursuant to Fed. R. Crim. P. 46(f)(1), the Court declares Defendant's $150,000 bail forfeited.

The Defendant is hereby directed to surrender to the U.S. Marshal's Service ("U.S.M.S.") by today.

Dated: Central Islip, New York on this 23rd day of August 2024.

S O  O R D E R E D:

/S/ *James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge